LAURIE A. TRAKTMAN (SBN 165588)
BENJAMIN M. O'DONNELL (SBN 309119)
**GILBERT & SACKMAN**
**A Law Corporation**
3699 Wilshire Boulevard, Suite 1200
Los Angeles, California 90010
Telephone: (323) 938-3000
Facsimile: (323) 937-3139
Email: lat@gslaw.org
Email: bodonnell@gslaw.org

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF SHEET METAL WORKERS' PENSION PLAN OF SOUTHERN CALIFORNIA, ARIZONA AND NEVADA; BOARD OF TRUSTEES OF SHEET METAL WORKERS' HEALTH PLAN OF SOUTHERN CALIFORNIA, ARIZONA AND NEVADA; BOARD OF TRUSTEES OF SOUTHERN CALIFORNIA SHEET METAL JOINT APPRENTICESHIP AND TRAINING COMMITTEE; BOARD OF TRUSTEES OF SOUTHERN CALIFORNIA SHEET METAL WORKERS' 401(a) PLAN;  BOARD OF TRUSTEES OF SOUTHERN CALIFORNIA LABOR-MANAGEMENT COOPERATION TRUST; SHEET METAL INDUSTRY FUND OF SOUTHERN CALIFORNIA; BOARD OF TRUSTEES OF SHEET METAL WORKERS LOCAL 105 RETIREES' SUPPLEMENTAL HEALTH CARE TRUST FUND; BOARD OF TRUSTEES OF SHEET METAL WORKERS LOCAL 105 HEALTH REIMBURSEMENT PLAN, <br><br> Plaintiffs, <br><br> v. <br><br> SO CAL A/C SERVICES, INC. and JUAN GABRIEL AVILA <br><br> Defendants. | Case No. 2:24-cv-380 <br><br> **COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR BREACH OF CONTRACT BETWEEN AN EMPLOYER AND A LABOR ORGANIZATION; BREACH OF TRUST AGREEMENTS; VIOLATION OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 (ERISA); AND PIERCING THE CORPORATE VEIL FOR INDIVIDUAL LIABILITY** |

Plaintiffs Board of Trustees of Sheet Metal Workers' Pension Plan of Southern California, Arizona and Nevada ("Pension Plan"); Board of Trustees of Sheet Metal Workers' Health Plan of Southern California, Arizona and Nevada ("Health Plan"); Board of Trustees of Southern California Sheet Metal Joint Apprenticeship and Training

1
COMPLAINT

Committee ("JATC"); Board of Trustees of Southern California Sheet Metal Workers' 401(a) Plan ("401(a) Plan"); Board of Trustees of Southern California Labor-Management Cooperation Trust ("LMCT"); Sheet Metal Industry Fund of Southern California  ("Industry Fund"); Board of Trustees of Sheet Metal Workers Local 105 Retirees' Supplemental Health Care Trust Fund ("Retirees Plan"); and, Board of Trustees of Sheet Metal Workers Local 105 Health Reimbursement Plan ("HRA") (collectively referred to as the "Plans"), aver as follows:

## JURISDICTION

1. Jurisdiction in this Court is based on the exclusive jurisdiction of the District Courts to hear civil actions brought by a fiduciary pursuant to sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(3) and 1145, to redress violations or enforce the terms of ERISA or a multiemployer plan governed by section 502(e) of ERISA, 29 U.S.C. § 1132(e). Such jurisdiction exists without respect to the amount in controversy or the citizenship of the parties, as provided in section 502(f) of ERISA, 29 U.S.C. § 1132(f).

2. Jurisdiction is also based on the jurisdiction of the District Courts to hear suits for violations of contracts between an employer and a labor organization, without regard to the amount in controversy or the citizenship of the parties, as provided in section 301(a) of the LMRA, 29 U.S.C. § 185(a).

3. Venue is proper in this District Court pursuant to section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and section 301(a) of the LMRA, 29 U.S.C. § 185(a), in that this is the district in which certain of the Plans are administered, the signatory local unions maintain their offices, and the acts averred below took place.

## PARTIES

### Plaintiffs

4. With the exception of the JATC, LMCT, and Industry Fund, at all times mentioned in this complaint, the Plans have been jointly trusteed, labor-management trust funds created and maintained pursuant to section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). At all times mentioned in this complaint, the JATC has been a pooled trust

fund created and maintained pursuant to section 302(c)(6) of the LMRA, 29 U.S.C. § 186(c)(6). At all times mentioned in this complaint, the LMCT has been a jointly trusteed labor-management trust fund created and maintained pursuant to section 302(c)(9) of the LMRA, 29 U.S.C. § 186(c)(9). At all times mentioned in this complaint, the Industry Fund has been a non-profit business league established pursuant to section 501(c)(6) of the Internal Revenue Code, 26 U.S.C. § 501(c)(6).

5. The Pension Plan and 401(a) Plan are "employee pension benefit plans" and "multiemployer plans" as defined in section 3(2)(A) and 3(37), respectively, of ERISA, 29 U.S.C. § 1002(2)(A) and (37)(A). The Health Plan, JATC, Retirees Fund, and HRA are "employee welfare benefit plans" and "multiemployer plans" as defined in section 3(1) and 3(37), respectively, of ERISA, 29 U.S.C. § 1002(1) and (37)(A).

6. Except for the Industry Fund, the Plans were created and are maintained and maintained pursuant to collective bargaining agreements between various employer associations and individual contractors located in the Southern California, Arizona and Nevada areas performing work in the sheet metal industry, an industry affecting commerce, and various local unions of the International Association of Sheet Metal, Air, Rail and Transportation Workers ("SMART"). As described more fully below, the Plans are funded by contributions from employers who are signatory to the collective bargaining agreements.

7. The Boards of Trustees of the Health Plan and the Pension Plan are, pursuant to written agreements with SMART Local Union No. 105 ("Local 105"), the authorized agents for purposes of collection for contributions owed by employers under collective bargaining agreements with Local 105 for employee savings ("Savings") and union dues ("Dues"), and empowered thereunder to file suit to collect such amounts owed.

8. The administrative offices of the Pension Plan and the Health Plan are located at 111 North Sepulveda Boulevard, Suite 210, Manhattan Beach, California. The administrative offices of the Retirees Plan and the 401(a) Plan are located at 160 W.

Santa Clara St., Suite 1450, San Jose, California. The administrative office of the JATC is located at 633 N. Baldwin Park Blvd., City of Industry, California. The administrative office of the HRA are located at 2120 Auto Centre Drive, Suite 105, Glendora, California, which is also the address for Local 105. The administrative offices of the LMCT and the Industry Fund are located at 12070 Telegraph Road, Suite 350, Santa Fe Springs, California.

Defendants

9. Defendant So Cal A/C Services, Inc. (the "Company") is a corporation organized and existing under the laws of the State of California, and is a licensed contractor by the State of California. At all times mentioned herein, the Company has been doing business at 4337 E 53rd Street, Maywood, CA 90270.

10. The Company is an "employer" as defined in section 3(5) of ERISA, 29 U.S.C. § 1002(5) and thus "obligated to make contributions to a multiemployer plan" within the meaning of section 515 of ERISA, 29 U.S.C. § 1145. The Company is also an "employer" engaged in "commerce" in an "industry affecting commerce," as those terms are defined in sections 501(1) and (3) of the LMRA, 29 U.S.C. § 142(1) and (3), and within the meaning of section 301(a) of the LMRA, 29 U.S.C. § 185(a), or the agent acting in the interest of such an employer within the meaning of Section 501(3) of the LMRA, 29 U.S.C. § 142(3).

11. Defendant Juan Gabriel Avila ("Individual Defendant"), is the officer, director, controlling shareholder, and beneficial owner of the Company.

12. The Individual Defendant, is responsible for running the day-to-day operations of the Company and are responsible for all decisions pertaining to the payment of contributions to the Plans, including decisions whether or not to pay such contributions.

13. The Individual Defendant, is owner-employee who were eligible to obtain benefits from the Plans under the Trust Agreements.

14. The Individual Defendant was listed as the Company's president in filings

with the California Secretary of State at the time of the delinquency.

15. Specifically, the Plans are informed and believe and on the basis of such information and belief aver, that the Individual Defendant, acted on behalf of and in the interest of the Company in all aspects of labor relations and in its dealings and relations with the Plans, including but not limited to determining which employees the Company would report to the Plans, the number of hours upon which contributions would be reported as owing, and the amount of owed contributions that would be paid. The Individual Defendant, authorized and made payments of employee benefit plan contributions from the Company to the Plans.

16. The Plans are informed and believe, and on the basis of such information and belief aver, that the Individual Defendant, acted on behalf of and in the interest of the Company in all aspects of labor relations and in its dealings and relations with the Plans, including but not limited to determining which employees the Company would report to the Plans, the number of hours upon which contributions would be reported as owing, and the amount of owed contributions that would be paid.

17. The Individual Defendant is an "employer" or agent of an employer engaged in "commerce" and in an "industry or activity affecting commerce" as defined in sections 501(1) and (3) of the LMRA, 29 U.S.C. § 142(1) and (3), and within the meaning of section 301(a) of the LMRA, 29 U.S.C. § 185(a), or the agent acting in the interest of such an employer as defined in section 501(3) of the LMRA, 29 U.S.C. § 142(3). The Individual Defendant is also "employer" within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5) and are thus "obligated to make contributions to a multiemployer plan" within the meaning of 29 U.S.C. § 1145.

18. The Plans are informed and believe, and on the basis of such information and belief aver, that the Company has failed to hold regular board meetings.

19. The Plans are informed and believe, and on the basis of such information and belief aver, that the Company has not consistently kept minutes of board meetings or executive meetings that were held.

20. The Plans are informed and believe, and on the basis of such information and belief aver, that the Company failed to maintain assets adequate to operate its business and pay its debts as they matured, including its obligations to contribute to the Plans described below.

21. The Plans are informed and believe, and on the basis of such information and belief aver, that the Individual Defendant transferred money between the Company's accounts and his personal accounts without keeping complete transaction records.

22. The Plans are informed and believe, and on the basis of such information and belief aver, that the Individual Defendant transferred money between the Company's accounts and his personal accounts without promissory notes, written loan agreements, or records of a debt obligation.

23. The Plans are informed and believe, and on the basis of such information and belief aver, that the Company did not issue shares of stock.

24. The Plans are informed and believe, and on the basis of such information and belief aver, that the Individual Defendant used Company assets for personal purposes.

25. The Plans are informed and believe, and on the basis of such information and belief aver, that the Individual Defendant made decisions in the absence of a meeting of the Company's board.

26. The Plans are informed and believe, and on the basis of such information and belief aver, that Individual Defendant guaranteed the Company's liabilities in his individual capacity.

27. The Plans are informed and believe, and on the basis of such information and belief aver, that at all relevant times the Individual Defendant has been the qualifying individual for state licensing and bond purposes, and the responsible managing officer for the Company.

28. The Individual Defendant was the partner, joint venturer, employer, employee, actual and ostensible agent, and representative of same and, in doing the acts

alleged, was acting on behalf of such partnership and joint venture, and within the course and scope, and the apparent course and scope, of such employment, agency, and representation and on behalf of such partnership and joint venture.

## THE OBLIGATION TO CONTRIBUTE

29. The Company entered into, executed, and at all material times has been party to a written collective bargaining agreement (the "Bargaining Agreement") with Local 105. The Bargaining Agreement establishes and renews the Trust Agreements. The Plans have at all times been intended third party beneficiaries of the Bargaining Agreement.

30. Under the Bargaining Agreement and Trust Agreements, an employer's monthly contributions to the Pension Plan, the Health Plan, the JATC, Retirees Plan, the 401(a) Plan, the Industry Fund, and the HRA are separately calculated by determining the total number of hours worked by the employer's employees in the reporting month, and multiplying these total hours by the prescribed hourly contribution rates set forth in the Bargaining Agreement. Under the Bargaining Agreement, an employer's monthly contributions for Savings and Dues are established as a deduction from wages. Additionally, beginning August 1, 1990, under the Bargaining Agreement and Trust Agreements, the employers make additional contributions to the 401(a) Plan based on an hourly contribution rate specified in the Bargaining Agreement.

31. The Bargaining Agreement and Trust Agreements obligate an employer to file monthly remittance reports with the Plans and to pay the contributions set forth in such reports by the tenth day of the month following the month in which such contributions were earned by the employees' labor. The Bargaining Agreement and Trust Agreements provide that contributions are delinquent if not paid by the twentieth day of such latter month. The Company and the Individual Defendant are fully aware of the obligation to timely pay contributions.

32. Because contributing employers themselves calculate and prepare the monthly reports, the Plans must rely upon the honesty of employers and their accuracy in

reporting the hours worked and contributions owed on behalf of their covered employees. To verify the accuracy of the reports, the Plans have at all times maintained an employer compliance examination program pursuant to the Trust Agreements and the Bargaining Agreement. As a part of this compliance examination program, the Plans' compliance examiners periodically examine the books and payroll records of contributing employers. If a compliance examination reveals that an employer owes contributions in excess of the amounts contained in the monthly remittance reports, in addition to demanding the delinquent amounts, the Plans assess an hourly compliance examination fee, together with other assessments described herein.

33. The Bargaining Agreement and Trust Agreements provide that if an employer fails to furnish remittance reports on a timely basis, it shall pay $200 per plan or ten percent of the delinquent contributions, whichever is greater, as a late filing assessment. In addition, the Bargaining Agreement and Trust Agreements provide that if contributions are delinquent, the employer will pay liquidated damages in the amounts of ten percent of the delinquent amount for the first month, and five percent of the delinquent amount for each month thereafter in which the contributions remain delinquent.

34. The Bargaining Agreement and Trust Agreements provide that an employer will be liable to the Plans for any costs incurred in, or relating to, the collection of any contributions, liquidated damages or late filing assessments, including interest and attorney's fees.

35. The Bargaining Agreement and Trust Agreements provide that in the event an employer is delinquent in the payment of contributions or liquidated damages for a period of fifteen days or more, then such employer shall, upon written notice, be required to furnish to the Plans or their representative all records and other information deemed necessary by the Plans to enable them to file mechanic's liens, stop notices or Miller Act claims on behalf of the affected employees pursuant to applicable state law, in order to collect unpaid compensation owing by the employer. The required information includes

identification of each project for which the employer supplied labor or materials, and the number of hours worked by the employer's employees at each job during the months in which the employer was delinquent.  The Trust Agreements further provide that the Plans may require the employer to submit this information to the Plans or their representative on a weekly basis while the employer remains delinquent. The Trust Agreements also acknowledge that the parties recognize that time is of the essence in the filing of the mechanic's liens, stop notices, or Miller Act claims, and provide that the employer must therefore supply such information immediately upon request by the Plans. The Bargaining Agreement further provides that any failure to provide such information by the Defendant corporation+ subjects the officer, director, and shareholder to individual liability.

## THE EMPLOYER'S DELINQUENCIES

36. The Company has failed and refused to remit contributions to the Plans for the work months of August 2021 to November 2023 and continuing through the present. The Company is therefore delinquent in its obligations to the Plans for such months in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $113,106.25.

37. The Company owes liquidated damages for the late payment or nonpayment of contributions for the work months of August 2021 to November 2023 and continuing through the present in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $22,621.25.

38. The Bargaining Agreement provides for interest to be paid on all delinquent contributions, calculated at the rate of twelve percent (12%) per annum.

39. The Company owes interest for the late paid or unpaid work months of August 2021 to November 2023 and continuing through the present, in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $11,310.62.

40. The Company was timely notified by letter of these delinquencies and it was

assessed liquidated damages, and payment of the delinquent contributions and liquidated damages was repeatedly demanded.  To date, the Company has failed and refused to pay the contributions and other sums owing and has refused to furnish mechanic's lien, stop notice, and Miller Act claim information.

41. The Company is fully aware of the obligation to make contributions on behalf of covered work performed by the Company's employees and the obligation to submit accurate remittance reports, as set forth herein, and is equally aware of its failure to make such contributions.

## FIRST CAUSE OF ACTION:
## AGAINST ALL DEFENDANT BY ALL PLAINTIFFS
## FOR INJUNCTIVE RELIEF AND DAMAGES BASED ON DEFENDANTS' BREACH OF CONTRACT BETWEEN AN EMPLOYER AND A LABOR ORGANIZATION
## [LMRA SECTION 301(a), 29 U.S.C. §185(a)]

42. The Plans reaver every averment of paragraphs 1 through 41 above as if they were repeated here in full.

43. At all times material herein, the Company has been and is now a party to a written Collective Bargaining Agreement with a labor organization representing employees in an industry affecting commerce.

44. The Bargaining Agreement obligates the Company to pay contributions to the Plans.

45. The Bargaining Agreement obligates the Company to allow the Plans to audit it to ensure that it has reported its employees' hours accurately and thus has made accurate contributions to the Plans.

46. The Company failed to make required contributions for the period of August 2021 to November 2023 2023 and continuing through the present.

47. The Company is therefore in violation of the Bargaining Agreement.

48. Defendants' failure to pay such contributions and other sums on the dates on which such contributions and other sums were due are violations of the Bargaining Agreement. As a direct result, Defendants have become indebted to the Plans for contributions and other sums, and will become indebted to the Plans for additional contributions and other sums, in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $147,038.12.

49. Defendants' failure to submit mechanic's lien, stop notice, and Miller Act claim information to the Plans is a violation of the Bargaining Agreement. As a direct result of Defendants' failure to furnish mechanic's lien, stop notice and Miller Act information to the Plans, the Plans have been damaged in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $147,038.12.

50. The Plans are informed and believe, and based upon such information and belief aver, that additional delinquencies have occurred both before and after the date of this complaint, and that such delinquencies are continuing. As a direct result, Defendants have become and will become indebted to the Plans for additional contributions and other sums in an amount which is presently unknown to the Plans, but which the Plans will establish by proof.

51. The Plans are informed and believe, and based upon such information and belief aver, that Defendants have threatened not to pay, and will refuse or fail to pay, future contributions to the Plans, and that it will thereby create future unpaid delinquencies during the remaining term of the Bargaining Agreement. Unless Defendants are enjoined from failing to make such contributions, furnishing such remittance reports and providing such mechanic's lien, stop notice, and Miller Act claim information, as described above, the Plans will suffer irreparable injury for which there is no adequate remedy at law since, among other things, the brief period of time in which mechanic's liens, stop notices, and Miller Act claims must be recorded or filed will expire, and additionally, the Plans will be required to bring a multiplicity of actions at

law to recover such delinquencies as they occur, to the Plans' great expense and hardship. On that basis, the Plans seek injunctive relief requiring Defendants to timely pay contributions, and to timely furnish remittance reports and mechanic's lien, stop notice, and Miller Act claim information for construction projects.

52. Section 301(a) of the LMRA, 29 U.S.C. § 185(a), authorizes suits in federal court "for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, … without respect to the amount in controversy or without regard to the citizenship of the parties."

53. Defendants therefore are liable to all Plaintiff Plans for damages and injunctive relief arising from Defendants' breach of the Bargaining Agreement.

## SECOND CAUSE OF ACTION:
## AGAINST ALL DEFENDANTS BY ERISA PLAN PLAINTIFFS
## FOR INJUNCTIVE RELIEF AND DAMAGES BASED ON DEFENDANTS' BREACH OF TRUST AGREEMENTS
### [ERISA SECTION 502(a)(3), 29 U.S.C. § 1132(a)(3)]

54. The Plans reaver every averment of paragraphs 1 through 53 above as if they were repeated here in full.

55. The Pension Plan, Health Plan, JATC, Retirees Plan, 401(a) Plan, and HRA ("ERISA Plans") are all multiemployer ERISA Plans.

56. Each of the ERISA Plans is governed by a Trust Agreement.

57. Defendants agreed to be bound by the terms of the ERISA Plans' Trust Agreements.

58. Each ERISA Plan's Trust Agreement obligates Defendants to make monthly contributions to the ERISA Plan.

59. Defendants are required by each ERISA Plan's Trust Agreement to pay the delinquent contributions, as well as liquidated damages, and interest.

60. Defendants have not paid the delinquencies for the work months of August 2021 to November 2023 and continuing through the present or the liquidated damages, interest for the late paid or unpaid work months of August 2021 to November 2023 and continuing through the present.

61. Defendants' failure to pay such contributions and other sums on the dates on which such contributions and other sums were due are violations of the Trust Agreements. As a direct result, Defendants have become indebted to the ERISA Plans for contributions and other sums, and will become indebted to the ERISA Plans for additional contributions and other sums, in an amount which is presently unknown to the ERISA Plans, but which the ERISA Plans will establish by proof and at present is in excess of $147,038.12.

62. Defendants' failure to submit mechanic's lien, stop notice, and Miller Act claim information to the ERISA Plans is a violation of the Trust Agreements. As a direct result of Defendants' failure to furnish mechanic's lien, stop notice, and Miller Act information to the ERISA Plans, the ERISA Plans have been damaged in an amount which is presently unknown to the ERISA Plans, but which the ERISA Plans will establish by proof and at present is in excess of $147,038.12..

63. The ERISA Plans are informed and believe, and based upon such information and belief aver, that Defendants have threatened not to pay, and will refuse or fail to pay, future contributions to the ERISA Plans, and that it will thereby create future unpaid delinquencies during the remaining term of the Bargaining Agreement. Unless Defendants are enjoined from failing to make such contributions, furnishing such remittance reports and providing such mechanic's lien, stop notice, and Miller Act claim information, as described above, the ERISA Plans will suffer irreparable injury for which there is no adequate remedy at law since, among other things, the brief period of time in which mechanic's liens, stop notices and Miller Act claims must be recorded or filed will expire, and additionally, the ERISA Plans will be required to bring a multiplicity of actions at law to recover such delinquencies as they occur, to the ERISA Plans' great

expense and hardship. On that basis, the ERISA Plans seek injunctive relief requiring Defendants to timely pay contributions, and to timely furnish remittance reports and mechanic's lien, stop notice, and Miller Act claim information for construction projects.

64. Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), creates a cause of action for suits "by a … fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

65. The Plaintiff Boards of Trustees of the ERISA Plans are fiduciaries within the meaning of section 502(a)(3), 29 U.S.C. § 1132(a)(3).

66. Plaintiff ERISA Plans are therefore entitled to relief for Defendants' violations of the terms of the ERISA Plans' Trust Agreements.

## THIRD CAUSE OF ACTION:
## AGAINST ALL DEFENDANTS BY ERISA PLAN PLAINTIFFS
## FOR INJUNCTIVE RELIEF AND DAMAGES FOR VIOLATION OF ERISA'S CONTRIBUTION REQUIREMENTS
## [ERISA SECTION 515, 29 U.S.C. § 1145]

67. The Plans reaver every averment of paragraphs 1 through 66 above as if they were repeated here in full.

68. By engaging in the acts described above, Defendants have violated the terms of the Plans, and thereby have violated certain provisions of ERISA including Section 515, 29 U.S.C. § 1145. As a direct result, Defendants have become indebted to the ERISA Plans for contributions and other sums, and will become indebted to the ERISA Plans for additional contributions and other sums, in an amount which is presently unknown to the ERISA Plans, but which the ERISA Plans will establish by proof and at present is in excess of $147,038.12.

69. The ERISA Plans are informed and believe, and based upon such

information and belief aver, that Defendants have threatened not to pay, and will refuse or fail to pay, future contributions to the ERISA Plans, and that it will thereby create future unpaid delinquencies during the remaining term of the Bargaining Agreement. Unless the Defendants are enjoined from failing to make such contributions, furnishing such remittance reports and providing such mechanic's lien, stop notice, and Miller Act claim information, as described above, the ERISA Plans will suffer irreparable injury for which there is no adequate remedy at law since, among other things, the brief period of time in which mechanic's liens, stop notices, and Miller Act claims must be recorded or filed will expire, and additionally, the ERISA Plans will be required to bring a multiplicity of actions at law to recover such delinquencies as they occur, to the ERISA Plans' great expense and hardship. On that basis, the ERISA Plans seek injunctive relief requiring Defendants to timely pay contributions, and to timely furnish remittance reports and mechanic's lien, stop notice, and Miller Act claim information for construction projects.

70. Section 515 of ERISA, 29 U.S.C. § 1145, requires that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

71. Defendants failure to make contributions to the ERISA Plans is a violation of section 515 of ERISA, 29 U.S.C. § 1145, and the ERISA Plans are entitled to recover the delinquent contributions, liquidated damages, and interest, as provided by the terms of the ERISA Plans' Trust Agreements.

72. Defendants must also pay Plaintiffs' attorney's fees under section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2).

73. Because Defendants acted with malice, oppression and conscious disregard of the rights of the ERISA Plans, the ERISA Plans are entitled to an award of punitive damages as an appropriate legal remedy available under section 502(g)(2)(E) of ERISA,

29 U.S.C. § 1132(g)(2)(E), in an amount deemed appropriate by the Court.

# FOURTH CAUSE OF ACTION:
# THE INDIVIDUAL DEFENDANT IS LIABLE FOR THE COMPANY'S UNPAID CONTRIBUTIONS AND ATTENDANT DAMAGES
# ("PIERCING THE CORPORATE VEIL")

74. The Plans reaver every averment of paragraphs 1 through 73 above as if they were repeated here in full.

75. The Plans are informed and believe, and on the basis of such information and belief, aver, that at the time the Company entered into the Bargaining Agreement with Local 105, the Individual Defendant, knew that some or all of them would be granted benefits under the Trust Agreements and would be eligible for benefits from the Plans regardless of whether the Company met all of its contribution obligations.

76. The Plans are informed and believe, and on the basis of such information and belief, aver, that by signing the Bargaining Agreement, the Company became eligible for some contracts and economic opportunities that it would not otherwise have been permitted to bid on.

77. The Plans are informed and believe, and on the basis of such information and belief, aver, that at the time the Company entered into the Bargaining Agreement, the Individual Defendant, knew that it would give the Company access to new contracts and economic opportunities.

78. The Plans are informed and believe, and on the basis of such information and belief, aver, that at the time the Company entered into the Bargaining Agreement with Local 105, the Individual Defendant, knew that the Company could not afford to make the contributions required by the Bargaining Agreement and Trust Agreements.

79. The Plans are informed and believe, and on the basis of such information and belief, aver, that at the time the Company entered into the Bargaining Agreement with Local 105, the Individual Defendant, knew that the Company's employee would be

eligible for benefits from the Plans regardless of whether the Company met all of its contribution obligations.

80. The Plans are informed and believe, and on the basis of such information and belief, aver, that at relevant times the Company lacked the income or capital to meet its obligation to contribute under the Bargaining Agreement and Trust Agreements.

81. Upon entering into the Bargaining Agreement, the Company's obligation to contribute was foreseeable and could reasonably be expected to arise within the course of its business.

82. The Trust Agreements obligate the Pension Plan to provide benefits to vested employees whether or not their employer makes contributions as required.

83. A company's "corporate veil" should be pierced and its shareholders held personally liable for the company's debts if (1) they failed to respect the corporate form; (2) limitation of shareholder liability would visit injustice upon the litigants; and (3) the shareholders either had fraudulent intent when they incorporated the company, or they engaged in a deliberate misuse of the corporate form.

84. The Individual Defendant's previously-alleged conduct, including but not limited to the failure to hold regular corporate meetings, failure to keep minutes of meetings, failure to retain enough capital to meet regular and foreseeable contributions, failure to keep complete records of monetary transfers between personal and Company accounts, treating of Company assets as their own, failure to issue Company stock, decision making in the absence of a Company board meeting, and personally guaranteeing Company debts, constitutes sufficient disregard of the corporate form to hold him individually liable.

85. The Individual Defendant's previously-alleged conduct, including but not limited to his knowledge that the Company could not afford its obligations under the Bargaining Agreement, knowledge that by entering the Company into the Bargaining Agreement at least the Individual Defendant would personally and individually be entitled to benefits from the Plan, knowledge that by signing the Bargaining Agreement,

the Company would gain access to new economic opportunities and contracts, and failure to maintain adequate capitalization to meet his contribution obligations while continuing to submit remittance reports, constitutes sufficient misuse of the corporate form to justify holding the Individual Defendant personally liable.

86. The fact that the Individual Defendant knew that he would personally benefit from the Plan's assets even if the Company never met or meets its contribution obligations to the Plans, that the Company was incapable of meeting its obligations when it entered into the Bargaining Agreement, that the Company was unable to meet debts that were reasonably foreseeable in the normal course of business, and that the Individual Defendant knew this constitute sufficient injustice to justify holding the Individual Defendant personally liable.

87. At all times material herein, the Individual Defendant was the partner, joint venturer, employer, employee, actual and ostensible agent, and representative of same and, in doing the acts alleged, was acting on behalf of such partnership and joint venture, and within the course and scope, and the apparent course and scope, of such employment, agency, and representation and on behalf of such partnership and joint venture.

88. For the reasons stated above, the Individual Defendant cannot take advantage of the corporate form's limit on liability and is, therefore, personally liable for all amounts owed to the Plans.

**PLAINTIFFS THEREFORE PRAY JUDGMENT AGAINST DEFENDANTS AS FOLLOWS:**

<u>As to All Causes of Action:</u>

1. That the Court restrain and enjoin Defendants, for so long as they remain contractually and legally bound to make payments of contributions to the Plans, from failing or refusing:

    (1) to make payments of contributions to the Plans on the dates on which they fall due;

        (2)    to submit to the Plans any remittance reports required from contributing employers on the dates on which they fall due; and,

        (3)    to submit to the Plans any and all information deemed necessary by the Plans to enable Defendants' employees or their representative(s) to file mechanic's liens, stop notices, and Miller Act claims.

<u>As to Cause of Action 1 (Recovery to all Plaintiffs):</u>

1. For payment of delinquent contributions from Defendants for all months that Defendants are delinquent at the time of trial, an amount which is currently unknown to the Plans but which the Plans will establish by proof and at present exceeds of $113,106.25.

2. For payment of liquidated damages from Defendants in an amount currently unknown to the Plans, but which the Plans will establish by proof and at present exceeds $22,621.25.

3. For prejudgment interest pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), and post-judgment interest in accordance with the Bargaining Agreement, the Trust Agreements and law, an amount currently unknown to the ERISA Plans, but which the ERISA Plans will establish by proof and at present exceeds $11,310.62.

4. For reasonable attorney's fees and costs of suit from Defendants.

<u>As to Causes of Action 2 and 3 (Recovery to the ERISA Plan Plaintiffs only):</u>

1. For payment of delinquent contributions from Defendants to the ERISA Plan Plaintiffs for all months that Defendants are delinquent at the time of trial, in an amount which is presently unknown to the ERISA Plans but which the Plans will establish by proof and at present exceeds $113,106.25.

2. For payment of liquidated damages from Defendants to ERISA Plan Plaintiffs in an amount currently unknown to the ERISA Plans, but which the ERISA Plans will establish by proof and at present exceeds $22,621.25.

3. For prejudgment interest pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), and post-judgment interest in accordance with the Bargaining Agreement,

the Trust Agreements and law, an amount currently unknown to the ERISA Plans, but which the ERISA Plans will establish by proof and at present exceeds $11,310.62.

4. For reasonable attorney's fees from Defendants to ERISA Plan Plaintiffs as required by section 502(g)(2)(d), 29 U.S.C. § 1132(g)(2)(d).

///

<u>As to Causes of Action 3 and 4 Only:</u>

1. For payment of punitive damages from the Defendants to the ERISA Plan Plaintiffs in an amount deemed appropriate by this Court.

<u>As to Cause of Action 4 Only:</u>

1. For payment from the Individual Defendant of actual damages presently estimated to be in excess of $147,038.12.

2. For prejudgment and post-judgment interest in accordance with applicable law; an amount presently unknown to the Plans, but which will be established by the Plans at the time of trial.

<u>As to All Causes of Action:</u>

1. For such other and further relief as to this Court may seem just and proper.

Dated: January 16, 2024              Respectfully submitted,

                            **GILBERT & SACKMAN**
                            A Law Corporation

By: /s/ Laurie A Traktman
      Laurie A. Traktman
     *Attorneys for Plaintiffs*